[Civ. No. 25451. Third Dist. Dec. 20, 1985.]

COUNTY OF BUTTE et al., Petitioners, v.
THE SUPERIOR COURT OF BUTTE COUNTY, Respondent;
HAL T. BROOKS, Individually and as Sheriff, etc., et al., Real Parties in
Interest.

694

## Counsel

Leonard & Lyde and Daniel V. Blackstock for Petitioners.

Mark A. Wasser as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Robert L. Hewitt for Real Parties in Interest.

Kreinces, Hemley & O'Brien, John P. O'Brien, Mastagni, Holstedt & Chiurazzi and Kenneth R. Hulse as Amici Curiae on behalf of Real Parties in Interest.

## Opinion

**CARR, Acting P. J.**—This proceeding in mandamus arises out of a dispute between the Butte County Board of Supervisors (Board) and the Butte County Sheriff, Hal T. Brooks, over the funding of the sheriff's department for the 1985-1986 fiscal year. The budget for that year was adopted by the Board on August 7, 1985. The new spending plan reduced the overall staffing of the sheriff's department by 12 positions. However, because of a prior

court judgment entered against the sheriff and the county, the budget actually included an increase in the sheriff's department personnel committed to the operation of the county jail. As a result, the number of peace officers and civilian employees available to the sheriff for all law enforcement and other functions not related to the jail was drastically reduced, with 23 positions being eliminated. In order to effectuate this reduction the Board, in conjunction with adoption of the 1985-1986 budget, also enacted an amendment to the county ordinance which establishes the number of authorized positions for each employment category within the sheriff's department. The amended ordinance reflected the changes in staffing required by the new budget, and necessitated that 23 current sheriff's department employees be demoted or laid off. The layoff and demotion notices were to be served on the affected employees on or before August 23, 1985. In an effort to halt implementation of the proposed diminution in staffing, the sheriff and several other parties filed a petition for writ of mandate in the superior court.[1]

The petition states five causes of action, and prays for relief on all counts in the form of a writ directing the Board to rescind the layoff and demotion notices and to provide "all the necessary funding in the budget for the . . . fiscal year 1985-1986, which will guarantee the continued employment of all employees . . ." in the Sheriff's department. The Sheriff also asked for a temporary restraining order prohibiting the demotions, layoffs, and reduction in funding pending hearing on the merits. (*Ibid.*) The superior court issued an order to show cause, and after a hearing on the return granted the preliminary injunction. The injunction bars the Board from proceeding with the layoffs and demotions, and orders that the Board continue to provide staffing and funding at the 1984-1985 fiscal year level during the pendency of the action.

The Board subsequently filed in this court an original petition seeking a writ of prohibition preventing the superior court from enforcing its preliminary injunction, and seeking a stay of the preliminary injunction pending our review of the petition on the merits. ■ Upon our initial review of the petition we concluded that, while prohibition may be an available remedy, mandate was the more appropriate relief since the Board is, in effect, requesting us to direct the superior court to set aside its order issuing the preliminary injunction. (See Cal. Civil Writs (Cont.Ed.Bar 1970) §§ 5.3, 10.64, pp. 64-65, 252-253.) Accordingly, we have chosen to treat the petition as one for mandate, rather than prohibition. (Cf. *Babb* v. *Superior*

---

[1]The petitioners in the superior court were the sheriff, two citizens of Butte County, and members of the staff of the sheriff's department. Named as respondents were the County of Butte, the Board, and the county's chief administrative officer. For convenience, we will henceforth collectively refer to the petitioners below (real parties in interest before this court) as "the Sheriff," and respondents (petitioners here) as "the Board."

*Court* (1971) 3 Cal.3d 841, 850 [92 Cal.Rptr. 179, 479 P.2d 379]; *Stapleton* v. *Superior Court* (1968) 70 Cal.2d 97, 105 [73 Cal.Rptr. 575, 447 P.2d 967].)

■ We are aware that an order granting or denying a preliminary injunction is specifically made appealable by Code of Civil Procedure section 904.1 and that normally the Board would be relegated to that remedy. However, mandamus is available to review orders relating to preliminary injunctions where the remedy at law is not "plain, speedy, and adequate . . . ." (Code Civ. Proc., § 1086; Cf. *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199 [211 Cal.Rptr. 398, 695 P.2d 695].) In this case, given the impact of the superior court's decision on the Board's budget process and because of the interest of all parties and the public in a prompt resolution of the immediate dispute over whether the layoffs, demotions, and budget reduction shall take effect forthwith, we have determined that the delay inherent in the appeals process renders it inadequate. (See *Acton* v. *Henderson* (1957) 150 Cal.App.2d 1, 7 [309 P.2d 481]; Cal. Civil Writs, *supra,* §§ 4.22, 5.39, pp. 52, 91.) We proceed, therefore, to consider the Board's petition on its merits.

■ "Although the trial court has broad discretionary powers to grant or deny a request for a preliminary injunction, it has 'no discretion to act capriciously.'" (*Robbins* v. *Superior Court, supra,* 38 Cal.3d at p. 205.) In deciding whether to issue a preliminary injunction, the trial court must consider two interrelated factors: (1) the harm likely to be suffered by each party in the event the injunction is granted or denied, and (2) whether there is a "reasonable probability that the plaintiffs will prevail on the merits." (*Id.,* at p. 206.) ■ Here, because we are convinced that as a matter of law there is no possibility that the Sheriff will prevail on the merits, we conclude that the superior court abused its discretion in granting the preliminary injunction regardless of the relative hardships to the parties.

The five causes of action contained in the petition filed below attempt to state claims on the basis of essentially the same factual allegations. The Sheriff contends that the undeniably major reductions in his budget and staff render him unable to perform the statutorily mandated duties of his office. These duties are set forth in Government Code sections 26600 et seq., and other statutes. They include, inter alia, preservation of the peace (§ 26600), the arrest of persons who commit crimes (§ 26601), the investigation of public offenses (§ 26602), the attendance (as bailiff) on the superior court (§ 26603), the service of process (§ 26608), and the levying of writs of attachment (Code Civ. Proc., § 488.030). In addition, the Sheriff of Butte County is obligated by contract to provide police services to the City of Biggs. The first cause of action brought by the Sheriff alleges that by the

reduction in funding and staff the Board has "unilaterally determined to make changes in the organizational structure of the Sheriff's Department by its use of the budget process." The second cause of action asserts the Board's action constitutes a violation of its duties under Labor Code sections 6400-6404 to provide the employees of the Sheriff's department with a safe working environment. The third cause of action is brought by a resident of the county, who alleges he will be deprived of a claimed constitutional right to a certain level of law enforcement. The fourth count is brought by a resident of the City of Biggs on the theory that he is a third party beneficiary of the contract between Butte County and the city, and that the county is preparing to breach that agreement. Finally, in the fifth cause of action, the Sheriff apparently claims that the Board is required by law to provide some unspecified minimal level of funding and staffing. As previously stated, all causes of action seek the same relief—an order directing adoption of a 1985-1986 budget maintaining the law enforcement operations of the Sheriff's department at their 1984-1985 level.

██ We begin with the fundamental proposition, not contested by the Sheriff, that the adoption of a budget is a legislative function, and that under the "separation of powers" principle which is fundamental to our form of government a court is generally without power to interfere in the budgetary process. (*Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 235 [138 Cal.Rptr. 101], and see *Mandel* v. *Myers* (1981) 29 Cal.3d 531, 539 [174 Cal.Rptr. 841, 629 P.2d 935].) ██ The power and obligation to enact a county's budget is vested by law in the board of supervisors. (Gov. Code, § 29088.) Furthermore, the board of supervisors is responsible for fixing the number of employees of each county office, their compensation, and other conditions of employment. (Cal. Const. art. XI, § 4, subd. (f), Gov. Code, § 25300.) The Charter of Butte County, pursuant to these constitutional and statutory expressions of general state law, requires that the Board shall annually "determine the number of deputies, assistants, clerks and stenographers . . . for each and every county officer." (Butte County Charter, art. III, § 3.) The charter also states that the number of salaries of "such deputies, assistants, clerks, stenographers, and other necessary employees may be increased or decreased by the Board of Supervisors at such time as may be to the best interests of the county . . . ." (*Id.*, at art. IV, § 7.) ██ In sum, "[t]he fixing of the number of employees, the salaries and employee benefits is an integral part of the statutory procedure for the adoption of the county budget, the fixing of the tax rate, and the levy of taxes." (*Hicks* v. *Board of Supervisors, supra,* 69 Cal.App.3d at p. 235.) This integrated process of determining the budget of a county and adjusting the number of employees in each county office to conform to the overall spending plan is a legislative function which "may not be controlled by the courts." (*Ibid.*)

■ Given these well defined and irrefutable principles, it is patent that the Butte County Board of Supervisors was acting within the scope of its constitutional role in undertaking to reduce the size of the Sheriff's staff. While the Sheriff, no doubt along with most heads of governmental offices, would understandably prefer to determine for himself the funding and personnel to be allocated to the agency for which he is responsible, that authority is vested in the Board. The chaos that would result if each agency of government were allowed to dictate to the legislative body the amount of money that should be appropriated to that agency, or its staffing and salary levels, is readily apparent. The budgetary process entails a complex balancing of public needs in many and varied areas with the finite financial resources available for distribution among those demands. It involves interdependent political, social and economic judgments which cannot be left to individual officers acting in isolation; rather, it is, and indeed must be, the responsibility of the legislative body to weigh those needs and set priorities for the utilization of the limited revenues available.

The Sheriff, in attempting to avoid these legal and logical precepts of governmental organization, relies on a few judicial decisions which have, on rare occasion, imposed limits on a county board of supervisor's control of the purse strings. We find, however, that notwithstanding those authorities, the Sheriff has failed to show any possibility that he is likely to prevail on the merits in his mandate action, and thus was not entitled to the preliminary injunction which was issued.

In *Hicks* v. *Board of Supervisors, supra,* the Orange County Board of Supervisors attempted, by use of its authority over the employment of county personnel, to transfer 22 members of the investigative staff of the district attorney to the sheriff. The board acted by way of a resolution; the transfer was not undertaken as part of the budgetary process nor was it "proposed or considered by the board as a budget item." (*Hicks, supra,* 69 Cal.App.3d at pp. 232-233.) The Court of Appeal upheld the trial court's finding that the board's resolution was an improper plan intended to "consolidate all county investigative functions under one agency; and that the transfer, although made during a hearing on the budget, was a transfer of functions from one agency to another and not an approval or disapproval of a budget item." (*Id.,* at p. 233.) The appellate court, while recognizing the board's power over the budget, found there was substantial evidence to support the lower court's factual finding that the resolution in question was not adopted pursuant to that authority, but was, rather, an attempt by the board, in the guise of a budgetary measure to transfer control of one officer's statutory function to another." (*Id.,* at p. 244.) Accordingly, the superior court's issuance of a writ of mandate directing the board to set aside its resolution was affirmed.

In this case, the Sheriff has alleged in his first cause of action that the Butte County Board of Supervisors has, by the staff reductions in the 1985-1986 budget, engaged in the type of reorganization condemned by *Hicks.* We find no evidence in the record to support this contention. First, there has been no action calculated to transfer any of the Sheriff's functions to another county office. Second, as the Sheriff pointed out to us, the Board stipulated in the course of the trial court proceedings that it "could not use the budgetary process to attempt to organize the Sheriff's Department and stipulated that the SHERIFF-CORONER may employ funds and personnel in the 1985-1986 budget in any fashion he chooses." Finally, the Board has submitted a declaration by the county's chief administrative officer, which details a bleak overall financial outlook for Butte County, and explains that due to a critical shortage of funds the Board was forced to undertake severe reductions in not just the Sheriff's office, but virtually all county programs, including fire protection and libraries. The Sheriff does not dispute the veracity of this declaration. Given these circumstances, *Hicks* is totally inapposite and the Sheriff has failed to establish even a possibility he is entitled to relief under the *Hicks* case. There is absolutely no evidence that the Board's actions vis-à-vis the Sheriff's office were motivated by anything other than legitimate fiscal concerns.

The Sheriff also relies on Government Code sections 29600 et seq. and cases applying those statutes. Section 29600 provides that "[c]harges incurred against the county pursuant to this title are county charges." Sections 29601 and 29602 deal directly with charges incurred by the Sheriff in the performance of his official duties, and states those are "county charges." Pursuant to these sections, courts have, on occasion, directed counties to honor claims for payment of expenses incurred by county officials or required by judicial order, even when no provision for such expenses had been made in the county budget. (See, e.g., *Corenevsky* v. *Superior Court* (1984) 36 Cal.3d 307, 324-325 [204 Cal.Rptr. 165, 682 P.2d 360]; *Niceley* v. *County of Madera* (1931) 111 Cal.App. 731 [296 P. 306].) In *Niceley,* the primary case cited by the Sheriff, the Madera County Sheriff had exhausted his budgeted funds, but nonetheless exposed the county to additional claims when he hired a posse to assist him in apprehending a troublesome band of cattle rustlers. (111 Cal.App. at p. 733.) The board of supervisors refused to pay for these additional services, but the court held that under the statutory predecessors to sections 29600 et seq., the county was liable for the charges incurred.

We fail to see how these authorities, which deal with the payment of specific claims arising out of the previous performance of services at the behest of a county official or judicial officer, buttress the Sheriff's demand that future general funding of his office be maintained at a level he deems

suitable. The court in *Hicks* dealt with a similar argument in language equally pertinent to the present case: "This section [29601] is unambiguous. All it does is provide that the expenses necessarily *incurred* for the enumerated purposes are county charges. The adoption of a budget is a legislative determination for purposes of appropriation and tax levy for future expenditures. While the Government Code provisions . . . should alert a responsible board of supervisors to the need to appropriate funds to pay the charges authorized, these provisions do not and could not delegate the budgetary power to county executive officers. . . ." (69 Cal.App.3d at p. 236.) As in *Hicks*, "[w]e are not here confronted with expenses already incurred, . . ." (*Ibid.*) The Sheriff seeks not to require the County of Butte to honor obligations arising out of benefits previously conferred, but, rather, to compel the Board to include in its budget funding sufficient to provide ongoing law enforcement services at the level desired by the Sheriff. Government Code sections 29600 et seq., do not constitute a legal basis for such action.

The Sheriff has provided neither a factual record, nor legal arguments, which would support a conclusion that there is any possibility of his ultimately prevailing on the merits. Accordingly, under the standards referred to above the trial court abused its discretion in issuing the preliminary injunction.

In reaching this result, we are cognizant of the fact that while this matter was pending before us the superior court issued an "Amended Statement of Intended Decision." In that intended decision, the court recognized that it is without authority to compel the adoption of a specific budget, but nevertheless concluded that it could mandate the Board to provide the Sheriff with a law enforcement staff for the fiscal year 1985-1986, which equals the staffing level for 1984-1985. The trial court's intended decision is not, of course, before us for review. However, the Sheriff and amicus California State Sheriff's Association have called it to our attention, apparently in order to persuade us that the preliminary injunction was properly entered because the Sheriff is entitled to a final judgment in his favor for the reasons expressed by the lower court.

We feel it appropriate to include a brief comment on the rationale employed by the trial court. The distinction it draws between ordering the Board to adopt a budget which provides the funding and staff to the Sheriff at 1984-1985 levels and ordering the Board to do the same thing without directing the adoption of a specific budget item, escapes our grasp. Obviously, the Board cannot provide the money demanded by the Sheriff without somehow adjusting its budget. The trial court's intended decision, is, in our view, the epitome of the glorification of form over substance, and ignores the reality of the ultimate impact it would have.

■ We have previously notified all parties we were considering the issuance of a peremptory writ of mandate in the first instance and have given respondent and real parties in interest the opportunity to submit additional opposition to such issuance. Therefore, we may issue a peremptory writ of mandate without first issuing an alternative writ. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order, and its amended order, issuing a preliminary injunction, and enter a new order denying the request for a preliminary injunction. Upon our decision herein becoming final, the stays we have previously issued shall be dissolved. In all other respects, the petition is denied.

Sparks, J., and Sims, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied March 26, 1986. Bird, C. J., was of the opinion that the petition should be granted.